**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW FREE, <br><br>          Plaintiff, <br><br>    v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> 950 Pennsylvania Ave. <br> Washington, D.C. 20530 <br>          Defendant. | Case No. 26-cv-01784 <br><br> **FREEDOM OF INFORMATION ACT COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## Introduction and Background

1. This is an action under the Freedom of Information Act (the "FOIA" or the "Act"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to obtain improperly withheld agency records concerning Chaofeng Ge's death in while in ICE custody at Moshannon Valley ICE Processing Center and records pertaining to the federal government's response to it. Through multiple FOIA requests described herein, Plaintiff sought agency records from Defendant U.S. Immigration and Customs Enforcement ("ICE").

2. Defendant ICE failed to adequately make a determination on Plaintiff's FOIA requests, as required by law, and failed to adequately search for and respond to Plaintiff's FOIA requests, in violation of the Act.

3. Plaintiff Andrew Free ("Free") seeks injunctive and declaratory relief requiring Defendant to immediately process and release the requested records.

1

**JURISDICTION AND VENUE**

4.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Plaintiff's request for injunctive relief is properly subject to this Court's subject-matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(F) and 28 U.S.C. §§ 1331, 2201(a), and 2202.

5.      Venue is proper within this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1).

6.      Plaintiff has exhausted all administrative remedies in connection with its FOIA requests, as detailed below.

7.      Because Plaintiff brings this action after constructively or actually exhausting administrative remedies, this Court's jurisdiction is based on 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(6)(C)(i).

8.      Congress passed the Freedom of Information Act, 5 U.S.C. § 552, in 1966 "to establish a general philosophy of full agency disclosure," S. Rep. No. 89–813, at 3 (1965), and "to assure the availability of Government information necessary to an informed electorate." H.R. Rep. No. 89–1497, at 12 (1966), 1966 U.S.C.C.A.N. 2418, 2429.

9.      The statute provides that, subject to certain enumerated exemptions for classified documents, agency personnel and medical files, confidential financial information, and the like (5 U.S.C. §§ 552(b)(1)-(9)), federal agencies generally must make their internal records available to the public upon request. *Id.* § 552(a)(3)(A).

10.    As the Supreme Court has recognized, FOIA's disclosure regime shines a light on government operations "to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

## PARTIES

11.    Plaintiff Free is a freelance investigative journalist, researcher, lawyer, and organizer who writes and publishes edited stories[1] and contributes his FOIA research to reports about deaths in ICE custody and the conditions that produce them.[2] Plaintiff also investigates and reports on law enforcement abuse and corruption issues.[3] He publishes a regular newsletter informing the public about deaths in DHS custody and the government's transparency practices[4] and is

---

[1] *See generally*, Andrew Free, Muck Rack (last visited May 20, 2026), available at https://muckrack.com/andrew-free.

[2] *See, e.g.*, ACLU, AM. OVERSIGHT, & PHYSICIANS FOR HUM. RTS., DEADLY FAILURES, PREVENTABLE DEATHS IN U.S. IMMIGRATION DETENTION 16 (2024) https://assets.aclu.org/live/uploads/2024/06/2024-07-01-ICE-Detainee-Deaths.pdf.

[3] *See, e.g.*, Andrew Free, *Trump's Deleted Police Misconduct Database Was Full of Prison and Border Incidents*, THE APPEAL (Feb. 27, 2025), https://theappeal.org/nlead-trumps-deleted-police-misconduct-database-full-of-prison-and-border/; Timothy Pratt & Andrew Free, *"Duped: How one Atlanta Cop Secretly Shilled For Police Tech*, THE INTERCEPT (Sept. 2, 2025), https://theintercept.com/2025/09/02/atlanta-seattle-police-axon-fusus-surveillance/; Andrew Free & Matt Scott, *Senior APD official failed to disclose financial interest in police tech company, ethics probe finds*, ACPC (June 26, 2025), https://atlpresscollective.com/2025/06/26/ethics-probe-freeman-fusus-conflict-of-interest/.

[4] *See* Andrew Free, Detention Kills (last updated May 11, 2026) available at www.detentionkills.substack.com.

regularly cited or quoted in media outlets covering immigration detention issues.[5]

Federal FOIA agencies have repeatedly identified Plaintiff as a representative of the news media and filer of "significant FOIA requests" since at least 2022.[6]

---

[5] *See, e.g.,* Elizabeth Weill-Greenberg, *GEO Group CEO Calls Lawsuits Against ICE Detention Facilities "Unwarranted" and "Unconstitutional,"* THE APPEAL (May 8, 2026), https://theappeal.org/geo-group-ice-lawsuits-unconstitutiona/; Douglas MacMillian et al., *Internal ICE records reveal widespread use of force in detention centers*, WASH. POST (May 4, 2026), https://www.washingtonpost.com/business/2026/05/04/ice-detention-centers-force/; José Olivares, *Cuban immigrant dies in Georgia detention center, ICE tells Congress*, THE GUARDIAN (May 1, 2026), https://www.theguardian.com/us-news/2026/may/01/georgia-ice-detention-death-cuban-immigrant; Press Release, Physicians for Human Rights, The 18th Death – and Fifth Death Attributed to Suicide – in ICE Custody this Year Spotlights Harms of Solitary Confinement, (May 1, 2026), https://phr.org/news/the-18th-death-and-fifth-death-by-suicide-in-ice-custody-this-year-spotlights-harms-of-solitary-confinement-phr/; Jazmine Ulloa et al., *Deaths in ICE Custody Are Growing. 'They Let Him Rot in There.'*, N.Y. TIMES (Mar. 29, 2026), https://www.nytimes.com/2026/03/29/us/ice-detention-deaths-immigrants.html?unlocked_article_code=1.XFA.Cln2.8qdgNERlxZ7o&smid=url-share; Lomi Kriel & Colleen Deguzman, *Six Deaths in six weeks: What to know about ICE detentions in Texas*, THE TEXAS TRIBUNE (Feb. 19, 2026), https://www.texastribune.org/2026/02/19/ice-detention-deaths-texas-east-montana-dilley-campos/; Brett Wilkins, *Private Prison firm GEO GROUP Reports Record $254 Million Profit After New ICE Contracts*, COMMON DREAMS (Feb. 12, 2026), https://www.commondreams.org/news/geo-group-ice-profits; Douglas MacMillian, *Medical examiner likely to classify death of ICE detainee as homicide, recorded call says*, WASH. POST (Jan. 15, 2026), https://www.washingtonpost.com/immigration/2026/01/15/ice-detention-death-homicide/; Isabel Del Mastro et. al, *ICE Inspections Plummeted as Detentions Soared in 2025*, POGO INVESTIGATES (Jan. 12, 2026), https://www.pogo.org/investigates/ice-inspections-plummeted-as-detentions-soared-in-2025; Rachel Uranga, *Immigrants decry conditions at former prison, ICE's largest detention center in California*, L.A. TIMES (Sept. 29, 2025), https://www.latimes.com/california/story/2025-09-29/detainees-protest-at-californias-largest-and-newest-immigration-detention-center; Emma Goldberg, *"People are Losing Hope" Inside ICE Detention Centers*, N.Y. TIMES (Sept. 16, 2025), https://www.nytimes.com/2025/09/16/health/ice-homeland-security-immigration-detention.html.

[6] *See, e.g.*, Weekly FOIA Report for Mar. 31, 2025, U.S. Department of Homeland Security at 8, 70, 130, and 164, available at

12.     Plaintiff's reporting, research, and scholarship rely on government records as an authoritative primary source for the official facts for his reporting on in-custody deaths.[7]

13.     Defendant ICE is an agency component of the U.S. Department of Homeland Security. ICE is the principal investigative arm of DHS and is charged with criminal and civil enforcement of the immigration laws in the U.S. interior. Among ICE's primary duties are the investigations of persons suspected of violating the immigration laws and the apprehension, detention, and removal of noncitizens who are unlawfully present in the United States.

14.     Defendant ICE is an agency within the meaning of 5 U.S.C. § 551(1). ICE has possession, custody, and control of records responsive to Plaintiff's FOIA requests.

15.     Because ICE ceased affirmatively disclosing all detainee death reviews that it previously released as a matter of course in February 2017, Free and others

---

https://www.dhs.gov/sites/default/files/2025-07/25_0731_PRIV_Chief_FOIA_Officers_Weekly_Report_March_31_25_to_June_30_25.pdf (DHS began affirmatively publishing these Reports, which Free exposed the existence of through a prior FOIA request, pursuant to 5 U.S.C. 552(a)(2) following several prior releases to Free in response to his FOIA requests. *See* https://www.muckrock.com/foi/united-states-of-america-10/dhs-significant-foia-activity-190417/).

[7] *See* Andrew Beale & Ethan Corey, *UCLA Law Behind Bars Data Project Unveils New Category of Data: Deaths in ICE Custody*, UCLA L. BLOG (Mar. 1, 2026), https://uclaprisondata.org/blog/ucla-law-behind-bars-data-project-unveils-new-category-of-data-deaths-in-ice-custody.

have been forced to repeatedly file FOIA requests in order to even gain access to the

official story of the circumstances surrounding deaths in custody.[8]

16.    Since 2019, Plaintiff has submitted over 300 FOIA requests to DHS

and its agency components.

17.    During this period, ICE has consistently failed to uphold its statutory

obligations as to Plaintiff Free's requests, forcing Plaintiff to repeatedly litigate in

order to derive meaningful information in a timely manner.

---

[8] *See, e.g.*, *Mami Chelo et al. v. U.S. Immigr. & Customs Enf't*, 26-cv-637 (S.D.N.Y. 2026); *Asian Americans Advancing Justice-Atlanta v. U.S. Immigr. & Customs Enf't*, 1:25-cv-00784 (N.D. Ga. 2025); *Mami Chelo v. Immigr. & Customs Enf't*, 1:25-cv-02546-PAE (S.D.N.Y. 2025) (Plaintiff files suit seeking records regarding noncitizen death in custody); *Am. Civil Liberties Union of Penn. v. Immigr. & Customs Enf't*, 2:24-cv-05675 (E.D. Pa. 2024) (Plaintiff files suit for ICE records regarding noncitizen death in Custody); *Rocky Mountain Immigr. Advocacy Network v. Immigr. & Customs Enf't*, 1:23-cv-02359 (D. Colo. 2023) (Plaintiff files suit to obtain records for two noncitizen deaths in custody); *Transgender L. Ctr. v. Immigr. & Customs Enf't,* 46 F.4th 771 (9th Cir. 2022); *Innovation L. Lab v. Immigr. & Customs Enf't*, 2:22-cv-00443 (D.N.M. 2022) (Plaintiff filed suit to obtain records regarding conditions in detention); *Refugee and Immigr. Center v. Immigr. & Customs Enf't*, 5:22-cv-00171 (W.D. Tex. 2022) (Plaintiff files FOIA lawsuit for disclosure of noncitizen suicide at Karnes detention center); *Buzzfeed v. Immigr. & Customs Enf't*, 610 F.Supp.3d 139 (C.D. Cal. 2022) (Plaintiff forced to file lawsuit to obtain DHS records in 2019); *Chaverra v. Immigr. & Customs Enf't*, 18-289-JEB (D.D.C. 2018) (Plaintiff forced to file suit after ICE failed to produce records); *Am. Civil Liberties Union of Colorado v. Immigr. & Customs Enf't*, 1:19-cv-01036 (D. Colo. 2019) (Plaintiff filed suit to obtain records of noncitizen's death in custody); *Leopold v. Immigr. & Customs Enf't*, 1:18-cv-02415 (D.D.C. 2018) (Plaintiff files suit to obtain records related to agency enforcement actions against noncitizens resulting in detention); *Owen v. Immigr. & Customs Enf't*, 2:22-cv-0050 (C.D. Cal. 2022) (Plaintiff sues seeking records regarding noncitizen death in detention); *Transgender L. Center v. Immigr. & Customs Enf't*, 1:21-cv-02155 (D.D.C. 2021) (Suit seeking to compel production of records regarding treatment of transgender people in DHS custody).

18.     Free notified ICE, its counsel, and DHS of the agency's unlawful pattern and practice of violating FOIA in writing on August 13, 2021, of several serial FOIA violations observed across multiple requests, indicating a pattern and practice of FOIA violations.[9]

19.     After Free's notification, multiple courts have concluded that ICE has an unlawful pattern and practice of failing to comply with FOIA.[10]

## FACTS

### Mr. Ge's Alleged Suicide

20.     Chaofeng Ge was found dead in a shower stall at the Moshannon Valley Processing Center in Philipsburg, Pennsylvania.[11]

21.     According to an autopsy report, his hands and feet were bound behind his back—a ligature pattern commonly referred to as "hog-tying."[12]

---

[9] *See* R. Andrew Free, *ICE's Pattern and Practice of Violating the Freedom of Information Act*,  Detention Kills, (Aug. 13, 2021) available at https://cdn.muckrock.com/outbound_request_attachments/ImmCivilRights/81848/2021_8_12_FOIA_PP_Letter_-_ICE_.pdf

[10] *See, e.g.*, *Owen v. Immigr. & Customs Enf't*, 2:22-cv-0050 (C.D. Cal. 2022); *Nightingale v. U.S. Citizenship & Immigr, Services, et al.*, 507 F.Supp.3d 1193 (N.D. Cal. 2020); *Stevens v. Immigr. & Customs Enf't*, 432 F.Supp.3d 752 (N.D. Ill. 2020).

[11] Rong Xiaoqing, *How $154.62 in Gift Card Fraud Led to a Man's Death in ICE Detention*, DOCUMENTED (Mar. 13, 2026), https://documentedny.com/2026/03/13/chaofeng-ge-ice-detention-death-pennsylvania/.

[12] Patrick Terpstra, *Autopsy raises questions about death at private ICE detention center*, SCRIPPS NEWS (Dec. 2, 2025), https://www.scrippsnews.com/investigations/ice-inc/autopsy-raises-questions-about-death-at-private-ice-detention-center.

22.     A local coroner declared Mr. Ge's death a suicide.

23.     ICE's public death report for Mr. Ge's omitted the hog-tying detail, revealing only that he was found with a bedsheet around his neck.[13]

24.     While some experts have opined that it is technically feasible to self-asphyxiate in the manner described by the records, they also warn that doing so takes a high degree of skill and familiarity with the knot and binding process necessary to do so.

25.     According to an interview with Ge's brother, he "behaved and talked like Forrest Gump."[14]

26.     Free's reporting based on records obtained through FOIA litigation about Frankline Okpu's death, who was the latest person to die at Moshannon Valley Processing Center before Ge's death, revealed that ICE death reviewers found GEO Group staff at the facility serially falsified records about Mr. Okpu.[15]

27.     Free has also learned through his reporting that the medical examiner who conducted both Okpu and Ge's autopsy failed to identify highly deadly drugs in

---

[13] ICE DETAINEE DEATH REPORT: GE, CHAOFENG, https://www.ice.gov/doclib/foia/reports/ddrChaofengGe.pdf.

[14] Rong Xiaoqing, *How $154.62 in Gift Card Fraud Led to a Man's Death in ICE Detention*, DOCUMENTED (Mar. 13, 2026), https://documentedny.com/2026/03/13/chaofeng-ge-ice-detention-death-pennsylvania/.

[15] Andrew Free, *Private Prison Falsified Records In Detainee's Death In ICE Custody*, THE INTERCEPT (Feb. 26, 2026), https://theintercept.com/2026/02/26/ice-geo-group-moshannon-death-falsify/?utm_source=substack&utm_medium=email.

Okpu's system, and that ICE failed to publicly disclose the presence of fentanyl in Okpu's official autopsy—instead attributing his death to "MDMA Toxicity."

**ICE's Death Policy**

28. Under ICE's own policy directives, when a noncitizen dies in ICE custody, a cascade of notifications and investigations commences. This includes the Detainee Death Report performed by ICE Enforcement Removal Operations (ERO). Separately, ICE's Office of Professional Responsibility (OPR) also performs a Detainee Death Review. *See* ICE DIRECTIVE 11003.6: NOTIFICATION, REVIEW, AND REPORTING REQUIREMENTS FOR DETAINEE DEATHS.[16]

29. ICE publicly released Mr. Ge's Death Report, performed by ICE ERO. The report consisted of a summary (two pages) regarding Mr. Ge's death in ICE custody at Moshannon Valley Processing Center ("MVPC"). *See* ICE DETAINEE DEATH REPORT: GE, CHAOFENG.[17]

30. ICE has not publicly released OPR's Death Review of Mr. Ge's death.[18]

31. Because ICE ceased affirmatively disclosing detainee death reviews as a matter of course in February 2017, Plaintiff and others have been forced to file

---

[16] https://www.ice.gov/doclib/foia/policy/11003-6.pdf.

[17] https://www.ice.gov/doclib/foia/reports/ddrChaofengGe.pdf.

[18] Since Mr. Ge's death, another immigrant, Fouad Saeed Abdulkadir, died on December 14, 2025, while under ICE custody at Moshannon Valley ICE Processing Center. ICE has not publicly released OPR's Death Review of Mr. Abdulkadir's death. *See* ICE DETAINEE DEATH REPORT: ABDULKADIR, FOUAD SAEED, https://www.ice.gov/doclib/foia/reports/ddr_ABDULKADIRFouadSaeed.pdf.

9

FOIA requests again and again in order to even gain access to the official story of the circumstances surrounding deaths in custody.

32.    Creative Corrections, a corrections consulting firm, holds a contract with ICE to perform compliance inspections of ICE detention facilities and to conduct independent analyses of detainee death reviews. *See Contracts,* CREATIVE CORRECTIONS (last visited May 12, 2026).[19]

**Plaintiff's Detention Records FOIA Request**

33.    On December 14, 2025, Plaintiff Free submitted a FOIA request to ICE seeking "[a]ll records pertaining to the detention, care, death, and post-death inquiry" for Mr. Ge. Plaintiff's request and correspondence with ICE are attached as Exhibit A, ICE detention records FOIA request, at 2.

34.    Mr. Free sought expedited processing of his request, discussing the public's interest surrounding detained people's deaths in ICE custody. *See id.* at 3.

35.    ICE responded to Mr. Free's request on January 7, 2026. ICE acknowledged the request and assigned it a case number of 2026-ICFO-08700. *See id.* at 7-8. In its response, ICE invoked a 10-day extension to determine whether to comply with the request and denied Mr. Free's request for expedited processing. *See id.* at 8-9.

36.    On January 12, 2026, ICE sent Mr. Free a final response letter notifying Mr. Free that ICE had determined the information Mr. Free requested as

---

[19] https://creativecorrections.com/contracts/.

"withholdable in its entirety" under 5 U.S.C. § 552(b)(7)(A). Plaintiff's final response letter from ICE is attached as Exhibit B, ICE Final Response Letter to Plaintiff's FOIA Request.

37.    On January 13, 2026, Mr. Free appealed ICE's determination that his request was related to law enforcement investigations that could lead to civil or criminal proceedings. Mr. Free stated that even if there were such investigations, withholding the materials in their entirety violated ICE's reasonable segregation obligations. *See* Ex. A at 10-11.

38.    ICE responded to Mr. Free's appeal on January 30, 2026. The agency acknowledged Mr. Free's appeal and assigned it a case number of 2026-ICAP-00160. *See id.* at 11-12.

39.    On February 27, 2026, ICE sent Mr. Free a final response letter to his appeal, notifying him that "[u]pon a complete review of the administrative record, ICE has determined that information previously withheld may be releasable to you under the FOIA," and remanding his request to the ICE FOIA Office for reprocessing. Plaintiff's final response letter concerning his appeal is attached as Exhibit C, ICE Final Response letter to Plaintiff's Appeal.

40.    Up to the date of this filing, Mr. Free has received no further communications from ICE regarding his FOIA request.

41.    As of the date of this filing, ICE has not completed its search and review of records responsive to Plaintiff's request.

11

42.    Any potential determinations by ICE that the records responsive to Mr. Free's request are exempt from disclosure under Exemption 7(A) would be an impermissible blanket withholding when considering the actual investigations underlying ICE Detainee Death Reviews.

43.    ICE Detainee Death Reviews are conducted pursuant to ICE Directive 11003.6. *See* ICE DIRECTIVE 11003.6: NOTIFICATION, REVIEW, AND REPORTING REQUIREMENTS FOR DETAINEE DEATHS.[20]

44.    According to ICE's Detainee Death Policy, reviews are neither criminal nor civil in nature and make no findings of liability or wrongdoing. No administrative proceeding accompanies the conclusions attached to the investigation, which is non-adversarial in nature, and lacks even a specific subject responsible and accountable for the conclusions. *See id.* at ¶¶ 1-2 ("Purpose/Background"), ("Policy").

45.    Findings carry no automatic consequences for standards and policy violations, areas of concern, or other issues discovered during the reviews. *See id.* at ¶¶ 3.3, 3.5 ("Mortality Review"), ("Detainee Death Review).

46.    As such, it is presumptively unlikely that investigations into a detainee's death pursuant to ICE's Death Policy are compiled for "law enforcement purposes" since those purposes must attach criminal or civil penalties in accordance with the investigation's findings. *See, e.g., Bartko v. U.S. Dep't of Just.*, 898 F.3d 51 (D.C. Cir. 2018) (quoting *Rural Housing Alliance v. United States Dep't of*

---

[20] https://www.ice.gov/doclib/foia/policy/11003-6.pdf.

*Agriculture*, 498 F.2d 73, 81 (D.C. Cir. 1974)) ("[t]o qualify as law-enforcement records, the documents must arise out of 'investigations which focus directly on specifically alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions.'").

**Plaintiff's Video Records FOIA Request**

47.    On February 16, 2026, Plaintiff Free submitted a FOIA request to ICE seeking video of Mr. Ge entering the shower area of the detention center "depicting the period beginning when he enters through the shower stall where he ended his life until the period where he is discovered by GEO staff or detained immigrants." Plaintiff's request and correspondence with ICE are attached as Exhibit D, Video Records FOIA Request, at 1-2.

48.    Plaintiff Free also sought photos of Mr. Ge's remains that were taken at the detention center, Significant Incident Report or Significant Event Notifications that ICE created pertaining to the death of Mr. Ge, as well as any working papers from the ICE Health Service Corps Mortality Review concerning Mr. Ge's death. *Id.*

49.    To date, Plaintiff Free has received no further responses from the agency.

50.    As of the date of this filing, ICE has not completed its search and review of records responsive to Plaintiff's request.

51.    As of the date of this filing, ICE has not taken action on Plaintiff's request that he can appeal.

52.     As of the date of this filing, ICE has not indicated to Plaintiff which records it will produce and which records it seeks to withhold.

53.     As of the date of this filing, ICE has failed to make a determination on Plaintiff's request for records.

**Urgent Public Interest in Timely Disclosure of ICE Death Records**

54.     Deaths in ICE detention have reached an all-time high.

55.     Thirty people have passed away so far in ICE custody during Fiscal Year 2026, surpassing the previous record high of 29 acknowledged in-custody deaths during Fiscal Year 2004. Ten percent of all people to die in the agency's custody died in 2025—the highest total ever.

56.     As a result, the public's interest in the circumstances of people's deaths, and the government's response to them, has also reached a tipping point. Free cited the agency to seventy news articles about ICE deaths and the conditions that produced them in support of his request for expedited processing. Since he filed his request, the volume of depth of coverage has only accelerated as ICE detention's death toll mounts.[21]

---

[21] *See, e.g.*, Isabela Dias, *Immigrants Are Dying in ICE Detention. A Key Watchdog Office Is Now Gone.*, MOTHER JONES (May 15, 2026), https://www.motherjones.com/politics/2026/05/how-the-trump-administration-gutted-immigration-detention-oversight/; Douglas MacMillian, *Internal ICE records reveal widespread use of force in detention centers*, WASH. POST (May 4, 2026), https://www.washingtonpost.com/business/2026/05/04/ice-detention-centers-force/; Camilo Montoya-Galvez, *ICE reports 18th detainee death in 4 months, putting agency on track for new record*, CBS NEWS (May 1, 2026), https://www.cbsnews.com/news/ice-detainee-deaths-2026/; Sergio Martínez-Beltrán et al., *Deaths of migrants in ICE custody hit record high under Trump*, NPR (Apr. 17, 2026), https://www.npr.org/2026/04/17/nx-s1-5789092/deaths-of-migrants-in-ice-

57.     Because of the public interest in these deaths in-custody, senior administration officials have faced questions from lawmakers and media about their numbers, causes, and efforts to mitigate conditions that allow people to die inside.

58.     For example, Tom Homan, who is reportedly functionally in charge of ICE's detention system, responded at-length to a question from CBS News about the numbers of people dying inside and what efforts the administration is taking to reverse this trend. When the CBS interviewer asked Homan about the upward trend in immigration detention deaths, Homan replied that "[a] better question would be, 'Why is [*sic*] ICE deaths in custody far below any state prison, any federal prison? Why do we have the lowest death in custody of any state prison system or any federal incarceration system.' Our deaths in custody are lower than everybody's. That's the first question you should be asking." *See Extended Interview:*

---

custody-hit-record-high-under-trump; Armando Garcia & Laura Romero, *Death rates at ICE detention facilities raise concerns about health standards: Study*, ABC NEWS (Apr. 16, 2026), https://abcnews.com/US/death-rates-ice-detention-facilities-raise-concerns-health/story?id=132121020;  St. John Barned-Smith & Ko Lyn Cheang, *Inside ICE detention centers, medical misdiagnoses and delays prove deadly*, SF CHRONICLE (Apr. 9, 2026), https://www.sfchronicle.com/projects/2026/ice-detention-deaths/; Jazmine Ulloa et al., *Deaths in ICE Custody Are Growing. 'They Let Him Rot in There.'*, N.Y TIMES (Mar. 29, 2026), https://www.nytimes.com/2026/03/29/us/ice-detention-deaths-immigrants.html; Justin Glawe, *Record deaths in US immigration custody expose systemic failures*, THE GUARDIAN (Mar. 21, 2026), https://www.theguardian.com/us-news/2026/mar/21/ice-deaths-trump-administration; Douglas MacMillan, *ICE detention staff reported death of restrained man as a suicide*, WASH. POST (Jan. 23, 2026), https://www.washingtonpost.com/business/2026/01/23/ice-detainee-death-911-calls/.

*Tom Homan Says ICE Embraced "Smarter" Deportation Tactics After Minneapolis*, CBS NEWS (May 5, 2026) (question and answer at 25:25).[22]

59.    In December, DHS Spokesperson Tricia McLaughlin, responding on X to an X post by Senate Judiciary Ranking Member Richard Durbin, stated that ICE's death rate is the lowest it's been in years.[23]

60.    These claims are provably false. According to a study in the Journal of the American Medical Association, a person's chances of dying in ICE detention, *i.e.*, the system's mortality rate, are the highest they've been in two decades—and exponentially higher than in the immediate past.

61.    Compounding the problem created by defending its record with statistically false claims masked as "Fact Checks", the administration has drastically scaled back the information it provides about each death, electing instead to characterized the departed as "criminal aliens" wherever possible, thus inviting the public to devalue their lives and memories, even where ICE itself possesses no record that the decedent was convicted of a crime.[24]

---

[22] https://www.cbsnews.com/video/extended-interview-tom-homan-says-ice-embraced-smarter-deportation-tactics-after-minneapolis/.

[23] *See* Tricia McLaughlin (@TriciaOhio), X (Dec. 20, 2025), https://x.com/TriciaOhio/status/2002467615294300639?ref_src=twsrc%5Etfw%7Ctw camp%5Etweetembed%7Ctwterm%5E2002467615294300639%7Ctwgr%5E70729c7 a7147155a5b87d5e53e21bab94c49fd21%7Ctwcon%5Es1_&ref_url=https%3A%2F%2 Fwww.foxnews.com%2Fpolitics%2Fdhs-fires-back-senate-dems-ice-detainee-death-claims-trying-twist-data.

[24] *See, e.g.*, *ICE criminal illegal alien detainee from Cuba passes away in Miami*, IMMIGR.& CUSTOMS ENF'T (Apr. 16, 2026), https://www.ice.gov/news/releases/ice-criminal-illegal-alien-detainee-cuba-passes-away-miami; *Criminal illegal alien from Mexico passes away at Glades County Detention Facility*, IMMIGR.& CUSTOMS ENF'T

62.     Given this admission, subjecting immigrants like Mr. Ge to the higher mortality rates in the federal prison system represents a conscious choice by federal officials to afford some immigrants in nominally civil detention a better chance at survival than others. As reported by Julia Ainsley's book, *Undue Process*, this conscious choice by federal officials is explicitly aimed at striking enough fear into the immigrant community through rising spectacles of in-custody deaths and harms that many elect to simply self-deport.[25] That objective, like the facility where Mr. Ge died, is punitive in nature and not a legally recognized purpose or power of ICE detention.

63.     Alleged suicides in ICE detention—like the one at issue in these records—have also risen dramatically since January 2025.[26]

---

(Mar. 18, 2026), https://www.ice.gov/news/releases/criminal-illegal-alien-mexico-passes-away-glades-county-detention-facility; *Criminal illegal alien from Afghanistan with previous arrests for fraud and theft passes away at Texas hospital*, IMMIGR.& CUSTOMS ENF'T (Mar. 18, 2026), https://www.ice.gov/news/releases/criminal-illegal-alien-afghanistan-previous-arrests-fraud-and-theft-passes-away-texas.

[25] JULIA AINSLEY, UNDUE PROCESS: THE INSIDE STORY OF TRUMP'S MASS DEPORTATION PROGRAM (Harper 2026).

[26] *See* Bart Jones & Belisa Morillo, *ICE arrest leads to Plainview man's suicide attempts, as his family copes with fallout of separation*, NEWSDAY (May 11, 2026), https://www.newsday.com/long-island/ice-mental-health-long-island-deport-plainview-mok6bxxx.

64.     As Free and others have documented,[27] at least nine people are alleged to have died by suicide since the start of the current administration—a drastic spike in what are commonly known to correctional health and safety experts as the most preventable form of death in custody.[28]

65.     Timely access to primary source documents shedding light on the government's own findings about whether deaths were preventable, and its subsequent response or inaction, is vital to arming the governed with the information necessary to hold the government accountable.

66.     Within this context, ICE's functional embargo of all death records for many months, and often, years, serves to prop up false and misleading narratives about the conditions people face inside, and what the agency is doing to ensure it lives up to its obligations under the Constitution and laws of the United States.

67.     ICE currently contends it is operating its detention system under funding authorized and appropriated by the One Big Beautiful Bill Act (OB3).

68.     But it also claims the rest of its functions are hampered by the ongoing lapse in federal appropriations that followed the death of two American citizens in Minneapolis by homicide at the hands of DHS agents.

---

[27] *See* José Olivares, *Cuban immigrant dies in Georgia detention center, ICE tells Congress*, THE GUARDIAN (May 1, 2026), https://www.theguardian.com/us-news/2026/may/01/georgia-ice-detention-death-cuban-immigrant.

[28] *See* Josephine Wonsun Hahn, *How to Lower the High Level of Jail Suicides,* BRENNAN CTR. FOR JUST. (Aug. 17, 2022),  https://www.brennancenter.org/our-work/analysis-opinion/how-lower-high-level-jail-suicides.

69.     One of the very few conditions limiting DHS's expenditure of funds is that its detention expenditures will be subject to standards set by the Secretary of Homeland Security, consistent with applicable laws.

70.     The standards ICE has set require people to file FOIA requests to obtain information about deaths in ICE detention, as they must under applicable law.

71.     Consequently, FOIA and OB3 require ICE to use OB3 funds to ensure the agency responds in a timely manner to FOIA requests about deaths in ICE detention, lest the standards set by the Secretary pursuant to OB3 exceed her authority under applicable law.

## CLAIMS FOR RELIEF

### COUNT I
### FAILURE TO MAKE A DETERMINATION
### VIOLATION OF 5 U.S.C. § 552 BY ICE

72.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

73.     FOIA requires an agency to make a determination within a maximum of 30 working days under *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3rd 180 (D.C. Cir. 2013) (Kavanaugh, J.).

74.     "[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents;

19

and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.* at 188.

75.    ICE has failed to make a determination as to the Plaintiff's FOIA request.

## COUNT II
## FAILURE TO ESTIMATE A DATE OF PRODUCTION
## VIOLATION OF 5 U.S.C. § 552(a)(7)(B)(ii) BY ICE

76.    Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

77.    Defendant must establish a telephone line or internet service to provide an estimated date on which the agencies will complete action on the request.

78.    In violation of this statute, Defendant failed to provide an estimated date on which the requests would be completed.

## COUNT III
## FAILURE TO MAKE REASONABLY SEGREGABLE, NON-EXEMPT
## RECORDS PROMPTLY AVAILABLE
## VIOLATION OF 5 U.S.C. § 552(a)(3) BY ICE

79.    Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

80.    Upon request, an "agency . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

81.    Defendant has violated this provision by failing to make records responsive to Plaintiff's requests "promptly available."

//

20

## COUNT IV
## VIOLATION OF 5 U.S.C. § 552(a)(4)(B)
## UNLAWFUL WITHHOLDING OF AGENCY RECORDS BY ICE

82.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

83.     ICE is a government agency subject to the FOIA and must therefore make reasonable efforts to search for and release requested records and otherwise lawfully support and provide the basis for any withholdings made pursuant to the exemptions provided by the FOIA.

84.     Plaintiff has a legal right under the FOIA to the timely search and release of responsive, non-exempt agency records responsive to the Plaintiff's FOIA requests.

85.     ICE failed to conduct a timely search and release responsive, non-exempt agency records in response to the Plaintiff's FOIA requests.

## COUNT V
## PATTERN AND PRACTICE OF VIOLATION OF TIME LIMITS BY ICE

86.     Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

87.     Defendant ICE has established a pattern and practice of violating statutory time limits of FOIA requests.

88.     Courts have previously granted judgment as a matter of law to the family member of someone who died in ICE custody, explaining that promptly available "typically would mean within days or a few weeks of a 'determination,' not months or years." *Sierra Club v. U.S. Env't Prot. Agency*, 2018 WL 10419238, at *5

21

(N.D. Cal. Dec. 26, 2018) (quoting *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 188) (internal quotation marks omitted); *Owen v. U.S. Immigr. & Customs Enf't*, 2023 WL 9470904, at \*6 (C.D. Cal. Jan. 12, 2023).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  enter judgment on all counts in favor of Plaintiff and against Defendants;

2.  declare Defendant's withholdings under the FOIA unlawful and enjoin Defendant from continuing to withhold all non-exempt records responsive to the FOIA Requests;

3.  declare Defendant's failure to proactively disclose Mr. Ge's Death Review records under the FOIA to be unlawful;

4.  declare that Defendant has a pattern and practice of failing to adhere to FOIA's proactive disclosure requirements;

5.  order Defendant to proactively produce and make available to the public all records responsive to Mr. Ge's Death Review;

6.  order Defendant to produce, within 20 days of the Court's order, or by such other date as the Court deems appropriate, all non-exempt records responsive to the FOIA Requests, all segregable records responsive to the FOIA Requests, and indices justifying the withholding of any responsive records withheld under any claim of exemption;

7.  award Plaintiff reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A); and

22

8. award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Dated: May 21, 2026

Respectfully submitted,

By: /s/ *Daniel Melo*
    Daniel Melo

The Melo Law Firm
2920 Forestville Road
Ste 100, PMB 1192
Raleigh, NC 27616
(919) 348-9213
dan@themelolawfirm.com

By: /s/ *Emily Burns*
    Emily Burns*

The Melo Law Firm
2920 Forestville Road
Ste 100, PMB 1192
Raleigh, NC 27616
(518) 423-8227
emily@themelolawfirm.com
*Pro hac vice application forthcoming*